Guido **BRUGIONI**, Surviving Partner of Dominick Brugioni and Guido Brugioni, a Partnership, d/b/a Manhattan Club, Appellant,

v.

**MARYLAND CASUALTY COMPANY**, an Insurance Corporation, and Manufacturers and Mechanics Bank of Kansas City, a Corporation, Respondents.

No. 50220.

Supreme Court of Missouri,

Division No. 2.

Sept. 14, 1964.

Motion for Rehearing or for Transfer to Court En Banc Denied Oct. 12, 1964.

Roger C. Slaughter, R. T. Brewster, Slaughter & Brewster, Kansas City, for appellant.

Hale Houts, Ralph H. Smith, Jr., Houts, James, Hogsett & McCanse, Kansas City, for respondents.

STORCKMAN, Presiding Judge.

The plaintiff Guido Brugioni sued as a third-party beneficiary to recover under a bond or policy of insurance the sum of $16,-

800 which amount he lost when he was held up and robbed on a parking lot maintained by the defendant Manufacturers and Mechanics Bank for the use of its customers. The bond was issued by the defendant Maryland Casualty Company and the named insureds were the Bank and the Sheffield Safe Deposit Company. The theory of the plaintiff's action is that, in addition to the named insureds, the bond is for the benefit of customers of the Bank who suffer losses at the place and in the manner he did. A jury was waived; the court found the issues in favor of both defendants and the plaintiff has appealed. The question presented in this court as in the trial court is whether the bond affords protection to customers of the Bank, a class of which the plaintiff is a member, or whether indemnification is limited to the named insureds, the Bank and the Safe Deposit Company. In the view we take of the case, the material facts are not in dispute.

The plaintiff and his father were partners in the operation of a tavern in Kansas City known as the Manhattan Club. The father died after the loss in question and the plaintiff became the sole owner of the cause of action. The plaintiff had been a customer of the Bank for a number of years and frequently borrowed money for the purpose of cashing payroll checks for his customers, chiefly employees of Sheffield Steel Company. Pursuant to previous arrangements, he went to the Bank on January 7, 1960, near noontime, and borrowed the sum of $16,800. As collateral security he gave the Bank an assignment of a savings and loan account and a lien on his home. The plaintiff put the cash proceeds of the loan in a cloth bag and went to his automobile which was on a parking lot maintained by the Bank for the convenience of its customers. As he started to get into the car he was held up and robbed by a band of three or four men. He was severely beaten during the robbery and was taken to a hospital where he remained until January 20, 1960.

None of the $16,800 taken in the robbery was recovered. The plaintiff paid off the Bank's loan in full, the last of it in June 1962. The plaintiff and his counsel had several interviews with Bank officers, who took the position that the loss was not covered by any of the Bank's insurance policies. Under date of April 1, 1960, plaintiff's attorney wrote a joint letter to the defendant Bank and the defendant Casualty Company in which he asserted that the loss was completely covered by the Bank's policy of insurance with Maryland Casualty Company an demanded immediate payment of the loss. The demand was not met and this suit was filed on June 13, 1960. The separate answers of the defendants admitted the existence of a contract of insurance but denied it was for the benefit of the plaintiff and further alleged that the defendant Casualty Company by its contract of insurance "agreed to indemnify and hold harmless only the Manufacturers & Mechanics Bank from and against any loss of its property through robbery in its parking lot."

The contract of insurance issued by Maryland Casualty Company is in evidence as plaintiff's exhibit 1 and the five riders attached are plaintiff's exhibits 1–A through 1–E. The contract and riders are all dated November 15, 1959. The contract on its face is designated "Bankers Blanket Bond, Standard Form No. 24". It is in the form of a policy of indemnity insurance and will sometimes be referred to as the bond.

The provisions of the bond relating to customers, and with which we are primarily concerned, is a rider identified as plaintiff's exhibit 1–C which we will sometimes refer to as rider 1–C. The pertinent insuring provisions and particularly insuring clause (B) with rider 1–C incorporated therein are as follows:

"THE LOSSES COVERED BY THIS BOND ARE AS FOLLOWS:

"(A) *  *  *

"(B) *  *  *

"Any loss of any of *the items of property enumerated* in the paragraph defining Prop-

erty, *in the possession of any customer* of the Insured or of any representative of such customer, *whether or not the Insured is legally liable for the loss* thereof,

"(a) * * *

"(b) * * *

"(c) through *robbery* or *hold-up* during banking hours while such customer or representative is in any building or *on any* driveway, *parking lot,* or similar facility *maintained by the Insured as a convenience for such customers* or representatives using motor vehicles provided that any such customer or representative is present in such building or on such facility for the purpose of transacting banking business with the Insured at any of the Insured's offices covered hereunder;

excluding, in any event, loss caused by such customer or any representative of such customer." Italics added.

The second paragraph of insuring clause (B), for which rider 1–C was substituted, covered losses of the same kind óf property through the same hazards "while within any of the Insured's offices covered hereunder". The legal effect of rider 1–C was to extend the coverage, among other places, to a "parking lot or similar facility maintained by the Insured as a convenience" for its customers present on such facility for the purpose of transacting banking business with the Insured.

The first paragraph of the bond recites that the Casualty Company "undertakes and agrees to indemnify and hold harmless THOSE DESIGNATED AS INSURED IN THE JOINT INSURED RIDER ATTACHED HERETO AS A PART HEREOF hereinafter referred to as Insured". The joint insured rider attached thereto is marked for identification as plaintiff's exhibit 1–D. Omitting immaterial portions, the rider provides as follows:

"1. From and after the time this rider becomes effective the Insured under the attached bond are: MANUFACTURERS AND MECHANICS BANK OF KANSAS CITY, KANSAS CITY, MISSOURI SHEFFIELD SAFE DEPOSIT COMPANY, KANSAS CITY, MISSOURI

"2. The first named Insured shall act for itself and for each and all of the Insured for all the purposes of the attached bond.

"3. * * *

"4. * * *

"5. * * * Payment by the Underwriter to the first named Insured of loss sustained by any Insured shall fully release the Underwriter on account of such loss.

"6. If the first named Insured ceases for any reason to be covered under the attached bond, then the Insured next named shall thereafter be considered as the first named Insured for all the purposes of the attached bond."

■ The contract provisions making the Bank and the Safe Deposit Company the named Insureds do not preclude other persons or classes of persons, such as customers, from being covered if other portions of the contract of insurance so provide. Giokaris v. Kincaid, Mo., 331 S.W.2d 633, 638–639[4]; Kelso v. Kelso, Mo., 306 S.W. 2d 534, 536[2, 3]; Couch on Insurance 2d, Vol. 3, § 23:4; Couch on Insurance 2d, Vol. 4, § 27:24. See also Wise v. St. Louis Marine Insurance Company, 23 Mo. 80.

■ It is true as the defendants contend that it is the court's duty to interpret insurance contracts and enforce them as they are written and not to remake them. Forir v. Toman, Mo., 202 S.W.2d 32, 34 [4]; Tant v. Gee, 348 Mo. 633, 154 S.W.2d 745, 748[7]. On the other hand, an insurance policy being a contract designed to furnish protection will, if reasonably possible, be interpreted so as to accomplish that object and not to defeat it, and, if terms of

the contract are susceptible of two possible interpretations and there is room for construction, the provisions limiting or cutting down on the coverage of the policy, or avoiding liability therefor, will be construed most strongly against the insurer. Giokaris v. Kincaid, Mo., 331 S.W.2d 633, 638–640[4]; Consumers Money Order Corporation v. Pettit, Mo.App., 358 S.W.2d 422, 424[2].

The defendants further contend that the money of which the plaintiff was robbed was not "Property" within the meaning of the bond because it was not money "in which the Insured has an interest" which is one of the terms or qualifications used in the paragraph of the bond defining "Property". There is no doubt that by reason of the completed loan the plaintiff owned the money and had exclusive possession of it and that the Bank had no direct interest in it. We are not concerned with the business interest or motive a bank would have in providing indemnity protection for its customers who are depositors and borrowers from loss by holdup or robbery while they are on the bank's premises.

The paragraph of the bond defining property deals with two categories; the first consists of enumerated items of property and the other of chattels not enumerated. Each has its own modifying clauses. The definition of Property mentions by name more than forty different kinds of property. Omitting the items of enumerated property not here involved, the paragraph reads as follows:

### "DEFINITION OF PROPERTY

"Wherever used in this bond Property shall be deemed to mean money, currency, coin, bank notes, Federal Reserve notes, * * * (1) in which the Insured has an interest or (2) which are held by the Insured for any purpose or in any capacity and whether so held gratuitously or not and whether or not the Insured is liable therefor, (3) and chattels which are not hereinbefore enumerated and for which the Insured is legally liable." The numbers in parentheses have been added for convenient reference.

It is apparent that the items of property as set out in the above paragraph are restricted by clause (1) which requires the insured to have an *interest,* or by clause (2) which requires that the item be *held* by the insured although it does not matter in such instance if the insured is liable or not liable for the loss. The indemnity provided in clause (3) relating to chattels *not enumerated* requires that the insured be liable for the loss. The defendants' contention that rider 1–C does not apply to money of customers in which the Bank has no interest does not take into consideration the significant language of reference in rider 1–C, the specific modifying provisions of the rider and the provisions of the policy as a whole.

The loss insured by rider 1–C is "any of the items of property enumerated in the paragraph defining Property"; there is a specific requirement that the item must be in the possession of a customer or his representative while on the Bank's premises. Terms of reference employed in other insuring clauses and in other parts of the bond are "Property" or "loss of Property", capitalized as in the definition itself. If it were the intent of rider 1–C to incorporate the restrictive or qualifying phrases and not merely the "items of property", that purpose could have been more consistently accomplished by starting the first paragraph of rider 1–C with the customary term "Any loss of Property * * *." It is quite evident that the reference term in rider 1–C, "items of property enumerated in the paragraph defining Property" was deliberately chosen to limit the reference and to avoid a conflict between other portions of rider 1–C and the defining paragraph.

The conflict which is pointed up by the defendants' contention is between the requirement of the defining paragraph that the insured Bank have an "interest" in the

property or that the property be "held" by it, and the requirement of the rider that the property be in the possession of the customer or his representative along with other qualifying circumstances. In other words, under the facts of this case, the customer would have to be in possession of money in which the Bank had an interest or which was held by the Bank. No one has undertaken to explain by what means a customer or his representative while on the Bank's parking lot would lawfully be in possession of money in which the Bank had an interest. As to the other modifier, obviously the money could not be in the possession of a customer on the parking lot and at the same time be held by the Bank. Moreover, if the Bank is the only party indemnified under rider 1–C, it would at least be a duplication because the same and greater coverage appears to be provided by other parts of the bond and in particular by the first paragraph of insuring clause (B) which covers loss of "the Property" while it is on the Insured's premises located anywhere. Furthermore, if the Bank alone is insured under rider 1–C, why should the Bank's loss be excluded if it is "caused by such customer or any representative of such customer" as provided in the last clause of the rider? The construction for which the defendants contend would render rider 1–C either redundant, unnecessary or entirely meaningless.

■■■ A policy of insurance must be construed as a whole and every clause must be given some meaning if it is reasonably possible to do so. Central Surety & Insurance Corp. v. New Amsterdam Casualty Co., 359 Mo. 430, 222 S.W.2d 76, 78[1], 80[6]. Furthermore, it is the duty of the court to reconcile conflicting clauses in an insurance policy if it is possible to do so consistent with the intention of the parties as ascertained from the terms used. Soukop v. Employers' Liability Assurance Corp., 341 Mo. 614, 108 S.W.2d 86, 92[8-12], 112 A.L.R. 149; Heald v. Aetna Life Insurance Co., 340 Mo. 1143, 104 S.W.2d 379, 383[6].

The coverage of the bond appears to have been carefully planned and the bond and its riders are skillfully drafted to express the coverage intended. As we have pointed out, rider 1–C contains its own qualifications or restrictions, both with respect to the property loss insured and the activity in which the customer must be engaged at the time. The word "items" as used in rider 1–C denotes an individual thing as an article of household goods or something singled out from a category of things of the same kind. Webster's Third New International Dictionary. The words "items of property enumerated in the paragraph defining Property," used in the rider appear to have been carefully and deliberately chosen to single out and isolate the enumerated articles of property to the exclusion of the modifying phrases relating to the interest and possession of the Bank.

In this case the item of property involved is "money". This is to be taken from the paragraph defining property and transferred to rider 1–C unencumbered by restrictions and qualifications of the definitive paragraph and subject only to the limitations imposed by rider 1–C. Consequently the insuring clause, rider 1–C, must be interpreted and applied to the facts of this case as if it read: "Any loss of [money] in the possession of any customer of the Insured * * *, whether or not the Insured is legally liable for the loss thereof, * * * (c) through robbery or hold-up during banking hours while such customer * * * is * * * on any driveway, parking lot or similar facilities maintained by the Insured as a convenience for such customers * * * using motor vehicles provided that any such customer or representative is present * * on such facility for the purpose of transacting banking business with the Insured at any of the Insured's offices covered hereunder; excluding, in any event, loss caused by such customer or any representative of such customer."

The result is that the loss of plaintiff's money through robbery was within the

coverage of the bond and the plaintiff is an indemnitee under the bond even though the plaintiff is not a named insured and contributed nothing directly to the payment of the premium. He is a third-party beneficiary and, in the circumstances of this case, si entitled to sue the defendant Casualty Company directly. Crow v. Kaupp, Mo., 50 S.W.2d 995, 997 [2]; Motley v. Callaway County, 347 Mo. 1018, 149 S.W.2d 875, 877 [7]; McCoy v. St. Joseph Belt Ry. Co., 229 Mo.App. 506, 77 S.W.2d 175, 180[2]. Under the law and the evidence the plaintiff is entitled to recover against the defendant Casualty Company.

■ We are not persuaded, however, that the plaintiff is entitled to a judgment against the defendant Bank. Plaintiff's theory of liability is that the Bank under rider 1–D was designated as agent for all insureds including customers and that the Bank was guilty of a breach of trust in refusing to present a claim to the Casualty Company on plaintiff's behalf. Regardless of what authority or obligation was imposed on the Bank by the rider, the plaintiff was not prejudiced because he could and did present his demand to the Casualty Company, and there is no showing that the plaintiff was damaged by the Bank's inaction or refusal to make a claim. The plaintiff's claim against the Bank is denied.

■ Section 375.420, RSMo 1959, V.A. M.S., provides that in any action against any insurance company to recover the amount of any loss under certain kinds of insurance policies, including indemnity, "if it appear from the evidence that such company has vexatiously refused to pay such loss," the court or jury may, in addition to the amount of the recovery, allow damages not to exceed ten percent on the amount of the loss and a reasonable attorney's fee. The plaintiff contends he is entitled to the statutory allowance in this case. An extended review of the many cases on the subject is unnecessary since the disposition of the issue depends essentially on the language of the statute and the record in the particular case. The decisions have generally held that the word "vexatiously", as used in the statute, means without reasonable or probable cause or excuse. Pfingsten v. Franklin Life Insurance Co., Mo., 330 S.W.2d 806, 817[17]; Dixon v. Business Men's Assurance Co. of America, 365 Mo. 580, 285 S.W.2d 619, 629[11]. Under the evidence and circumstances shown by the record, we are convinced that the refusal of the Casualty Company to pay the loss and the ensuing conduct of the litigation was not vexatious in the statutory sense. We are buttressed in this conclusion by the fact that an able trial judge initially found the issue of liability in favor of the defendant Casualty Company.

■ Since this is a court-tried case and it appears that no additional evidence could be adduced at a new trial, we are admonished to render or direct the entry of such judgment as the trial court ought to have given. Section 512.160(3), RSMo 1959, V.A.M.S.; Sebastian County Coal & Mining Co. v. Mayer, 310 Mo. 104, 274 S.W. 770, 773–774[6]; Young v. New York Life Insurance Co., 360 Mo. 460, 228 S.W.2d 670, 672.

Accordingly, the judgment in favor of the defendant Manufacturers and Mechanics Bank of Kansas City is affirmed. The judgment in favor of the defendant Maryland Casualty Company is reversed and the cause is remanded with directions to enter judgment in favor of the plaintiff and against the defendant Casualty Company as of March 25, 1963, the date of the original judgment, for the sum of $16,800 with interest thereon at the rate of six percent from April 1, 1960, the date of demand, to said March 25, 1963, and that the judgment so rendered bear interest as provided by law. Section 408.040, RSMo 1959, V.A. M.S.

All of the Judges concur.