(584 P.2d 1264)

No. 49,271

UNITED STATES FIDELITY & GUARANTY COMPANY, *Appellee,* v. SUE HOKANSON, *Appellee,* and DEBRA COOKSON and FARM BUREAU MUTUAL INSURANCE COMPANY, INC., *Appellants.*

Opinion filed October 6, 1978.

*Edward F. Home,* of Manhattan, for appellant Farm Bureau Mutual Insurance Company, Inc.

*Roger Sherwood,* of Sherwood & Hensley, of Wichita, for appellee Sue Hokanson.

*Michael E. Foster,* of Kaufman, Bonwell & Foster, of Wichita, for appellee United States Fidelity & Guaranty Company.

Before ABBOTT, P.J., REES and SWINEHART, JJ.

ABBOTT, J.: This is an appeal by Farm Bureau Mutual Insurance Company, Inc. (Farm Bureau) from an order in a garnishment proceeding whereby Farm Bureau was ordered to pay United States Fidelity & Guaranty Company (USF&G) and Sue Hokanson a judgment rendered against Debra Cookson.

This action arises out of a one-car accident that occurred on March 14, 1974. Sue Hokanson was driving a 1972 Chevrolet

Blazer titled in her husband's name. The Western Fire Insurance Company (Western) insured the 1972 Chevrolet Blazer. Debra Cookson was seated on the middle of the front seat. She owned a 1965 Mustang and was a named insured of Farm Bureau. The right front seat was occupied by Katherine Hawthorne who was insured by USF&G.

The accident occurred when Debra Cookson suddenly pulled on the steering wheel, causing the driver, Sue Hokanson, to lose control of the vehicle. The vehicle overturned and Katherine Hawthorne was injured. USF&G paid personal injury protection (PIP) benefits to Katherine Hawthorne under her policy, and pursuant to K.S.A. 40-3113(c) sued both the driver, Sue Hokanson, and the passenger who yanked the steering wheel, Debra Cookson, to recover the PIP benefits in the amount of $2,302.53 it had paid to Katherine Hawthorne.

Western, in defending its insured driver, Sue Hokanson, filed a cross-claim in her name against Debra Cookson for $2,559.60, the amount of property damage Western had paid to Hokanson.

Farm Bureau refused to defend Debra Cookson, who then employed private counsel. Judgment was entered by consent against Ms. Cookson in favor of USF&G in the sum of $2,302.53, the amount USF&G had paid Katherine Hawthorne in PIP benefits. Consent judgment was also entered against Ms. Cookson in favor of Sue Hokanson for the property damage to her car in the amount of $2,559.60. The claim of USF&G against Sue Hokanson was then dismissed with prejudice.

An order of garnishment was served on Farm Bureau. Farm Bureau answered denying coverage and further alleging that if its policy afforded Debra Cookson coverage it would be excess coverage over and above the primary coverage afforded Sue Hokanson by Western. Exception to Farm Bureau's answer in garnishment was taken by USF&G and Hokanson (Western).

The trial judge found as follows:

"1. That when Debra Cookson grabbed the steering wheel as set out more fully in the depositions, she obtained use of the Hokanson vehicle as contemplated in Farm Bureau's contract of insurance; and,

"2. That she did so without the permission of the insured or his spouse as required under Paragraph III, sub-paragraph A of Western's contract of insurance.

"I therefore find that Debra Cookson's policy of insurance with Farm Bureau provides coverage in this matter and is subject to the judgment entered against Debra Cookson."

Farm Bureau appeals, contending the trial court erred in finding that Farm Bureau provided coverage to Debra Cookson and that Western did not.

Both Western and Farm Bureau introduced their respective insurance policies into evidence and we have had an opportunity to examine them. We note at the outset that Farm Bureau's insurance policy named Debra Cookson as a named insured. Under the terms of that policy she would be covered in "the use of any other automobile" despite the fact that she might be using that automobile without the permission of anyone authorized to give permission to her.

Farm Bureau contends that the actions of its insured do not amount to the "use" of the Hokanson vehicle within the meaning of its policy. It is Farm Bureau's position that as its named insured had no care, custody, or dominion over the vehicle, she was not "using" it.

Basically, coverage clauses are interpreted broadly to afford the greatest possible protection to the insured, while exclusionary clauses are interpreted narrowly against the insurer. The word "use" in Farm Bureau's policy is given a broad, general and comprehensive meaning effecting broad coverage in view of the fact it is found in coverage clauses. (*United States Steel Corp. v. Transport Indem. Co.*, 241 Cal. App. 2d 461, 50 Cal. Rptr. 576 [1966]; *United States Fidelity & Guaranty Co. v. Continental Ins. Co.*, 1 Kan. App. 2d 722, 573 P.2d 1106 [1977].)

The Kansas Supreme Court has had occasion to define the term "use" in an insurance context. In *Esfeld Trucking, Inc. v. Metropolitan Insurance Co.*, 193 Kan. 7, 11, 392 P.2d 107 (1964), the Supreme Court discussed the term and stated that the court "must consider whether the injury sustained was a natural and reasonable incident or consequence of the *use* of the vehicle involved for the purposes shown by the declarations of the policy though not foreseen or expected." In *Alliance Mutual Casualty Co. v. Boston Insurance Co.*, 196 Kan. 323, 411 P.2d 616 (1966), the term "use" was said to be a broad catchall designed and construed to include all proper uses of the vehicle. One treatise has defined "use" as "[a]ny exercise of control over the vehicle constitutes a use, regardless of its purpose, extent, or duration." (12 Couch, Insurance § 45:64, p. 153 [2d ed. 1964].)

Appellant argues that to allow Debra Cookson's actions to be

covered by automobile liability insurance protecting against bodily injury or property loss arising out of the use of an automobile would be to extend such coverage to a personal liability situation. In support of this proposition, Farm Bureau cites *Potomac Insurance Company v. Ohio Casualty Insurance Company,* 188 F. Supp. 218 (N.D. Cal. 1960). We cannot agree. The insured in *Potomac* was a passenger in the automobile involved in an accident. The passenger was sued by two other passengers who sought to hold him liable for their injuries on the theory that he had distracted the driver. A California federal district court held that the defendant was a mere guest, noting there was no evidence that he had exercised any authority or control over the driver or the manner in which he drove the automobile. *Potomac* is clearly distinguishable in view of the fact that in this case Debra Cookson actually took control of the automobile. When Debra Cookson grabbed the steering wheel she obtained the use of the vehicle. By grabbing the wheel and exerting a force on it, she obtained control of the vehicle, even though for only an instant. It is immaterial that she exercised control solely for the purpose of perpetrating a prank.

Unauthorized control previously has been held to constitute the use of a vehicle. In *Bowman v. Preferred Risk Ins. Co.,* 348 Mich. 531, 83 N.W.2d 434 (1957), the Michigan Supreme Court held that one who entered an automobile without the permission or knowledge of its owner and attempted to move it a short distance in order to allow him to park his car was "using" the vehicle within the meaning of the policy when he released the handbrake, turned the steering wheel, and struck another vehicle due to the car's defective brakes.

We believe that when a person takes control of a moving vehicle, even though for only an instant, that person has gained control over it and is operating it within the normal definition and understanding which ordinary laymen would give to an insurance policy.

Farm Bureau's automobile liability insurance policy did not require the named insured to obtain permission to "use" an automobile belonging to a third party. Simply stated, the Farm Bureau policy would afford insurance protection to the named insured, even though the insured might be driving without the owner's permission and even though the automobile had been

stolen by the named insured. Western's insurance policy provides coverage under a standard omnibus clause for any person or organization legally responsible for the use of the insured automobile "provided the actual use of the automobile is by the named insured or spouse or with the permission of either." The trial judge thus determined that Debra Cookson was not driving the insured vehicle with either the express or implied permission of Western's named insured or spouse and denied recovery under its policy.

Western takes the position that this court need only search the record for substantial competent evidence to support the findings of the trial court. Our scope of review is not so limited. The evidence before the trial court consisted wholly of depositions, an accident report, and two insurance policies. When the controlling facts are based upon written or documentary evidence of the kind before us, the trial court has no peculiar opportunity to evaluate the credibility of witnesses, and this court has as good an opportunity to examine and consider the evidence as did the trial court. (*United States Fidelity & Guaranty Co. v. Continental Ins. Co.,* supra; *Reznik v. McKee, Trustee,* 216 Kan. 659, 534 P.2d 243 [1975].) Farm Bureau first asked this court to find that if its insured was "using" the vehicle within the meaning of the "use of other vehicle" coverage of its policy, then she must have been "using" the vehicle within the meaning of the omnibus clause of the Western policy. Again, public policy requires that the omnibus clause of an automobile liability insurance policy be liberally construed. (*Alliance Mutual Cas. Co. v. Hartford Accident & Indemnity Co.,* 210 Kan. 769, 504 P.2d 161 [1972].) There being no substantial difference in the language in the two policies or in the manner in which the term "use" is employed, it would seem to us that if a person is using an automobile within the meaning of the Farm Bureau policy, then that person must also be using the automobile within the meaning of the Western policy.

Farm Bureau then argues that this court should adopt the "initial permission" rule. Under this rule, the person using the vehicle need have received permission only in the first instance, and any use of the vehicle while it remains in the permittee's possession is with permission although that use is for a purpose not contemplated by the one originally giving permission. Followed to its logical conclusion, Farm Bureau contends that when

Sue Hokanson, Western's insured, invited Debra Cookson, Farm Bureau's insured, to accompany her on the trip, she thereby gave her permission to Cookson to use the vehicle, and that as a result Cookson's actions in grabbing the wheel were within the permission of the insured. Farm Bureau's argument has not been followed in the past by the Kansas appellate courts.

Although the legislature has seen fit to require automobile insurance, and our courts have consistently held that the insuring clauses are to be construed liberally to protect the public, Kansas has not adopted Farm Bureau's position. While the argument is forceful, and we might be inclined to adopt that position if we were free to do so, we are faced with the recent Supreme Court decision wherein the Kansas Supreme Court had an opportunity to apply the "initial permission" rule and did not do so. In *Gangel v. Benson,* 215 Kan. 118, 523 P.2d 330 (1974), the Supreme Court denied coverage to a second permittee who was operating a vehicle when the named insured had expressly prohibited the first permittee from allowing other persons to use or operate the vehicle. We point out that such a prohibition by the named insured may not prevent the application of an omnibus clause when the vehicle is being used for the benefit of the first permittee or the named insured, or if the first permittee has an equitable title or its equivalent and has unfettered control over the daily use of the car outside the surveillance of the named insured, or if the named insured is aware of past violations of instructions but allows the permittee to retain possession. (*Jones v. Smith,* 1 Kan. App. 2d 331, 564 P.2d 574 [1977].) Thus, Kansas does not follow the "initial permission" rule, nor does it follow the "strict" rule, but rather has adhered to a moderate view.

Applying the moderate view, the question becomes whether the deviation from the permission granted is "minor" or "material." While Debra Cookson was granted permission to be a passenger in the vehicle, she materially deviated from her permitted use as a passenger when she took control of the operation of the vehicle from a passenger's location by grabbing the steering wheel while the car was traveling at sixty miles per hour. She did not have permission of the named insured to take physical control, nor was she an insured under the policy.

Farm Bureau calls our attention to *Home Indemnity Company v. Lively,* 353 F. Supp. 1191 (W.D. Okla. 1972) wherein the

Federal District Court, on facts similar to our case, held that the passenger's insurance was excess coverage insurance where the passenger threw a pop bottle from a moving vehicle, striking a pedestrian in the head and causing severe injuries. There the court found the occupancy was with the permission of the owner, and the passenger's act of throwing out the bottle was within the scope of the owner's permission. In *Lively,* the passenger was not exceeding the scope of the owner's permission at the time of the accident. It is not unreasonable to assume that a passenger might throw an object out of a moving vehicle. It is unreasonable to assume that a passenger will grab a steering wheel and, without warning to the driver, give it a yank while the car is traveling at sixty miles per hour.

Farm Bureau argues that it should not be required to pay for the automobile since its collision or upset provision does not apply to any loss where there is other insurance that would apply thereto. Western's policy paid for its insured's vehicle, and it is Farm Bureau's position that Sue Hokanson cannot now maintain a collision claim against Farm Bureau since she had coverage under her policy with Western which paid for her damage. Unfortunately for Farm Bureau, the claim is not made against the collision or upset provision, but is made as a property damage liability claim, and we find no language in the policy which would bar it on that basis. Coverage B of the Farm Bureau policy provides that Farm Bureau will "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile." The property damage arose out of the use of a vehicle, and thus it is covered by the property damage section of the Farm Bureau automobile liability policy. If Farm Bureau had desired to limit a claim of this type, it easily could have provided for an exclusion similar to that found in its collision and upset provision.

Affirmed.