Argued and submitted July 26, resubmitted in banc October 6, affirmed in part, reversed in part and remanded December 15, 1982, reconsideration denied February 9, petition for review denied March 1, 1983 (294 Or 569)

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY et al,
*Respondents,*
*v.*
WHITE et al,
*Appellants,*

(No. E81-1431, CA A23822)

655 P2d 599

Dean Heiling, Roseburg, argued the cause for appellants. With him on the brief was Heiling & McIntosh, Roseburg.

Donald A. Loomis, Eugene, argued the cause for respondents. With him on the brief was Loomis, Tomlinson & Kurtz, Eugene.

THORNTON, J.

Gillette, J., concurring.

Richardson, J., dissenting in part; concurring in part.

Warren, J., dissenting in part; concurring in part.

## THORNTON, J.

The plaintiffs in this declaratory judgment action are insurers who contend that they have no duty to defend or pay judgments in actions brought against defendant Lorri Ann White for injuries she caused by grabbing and manipulating the steering wheel of a car in which she was a passenger. White and three other defendants[1] appeal from the trial court's judgment in plaintiffs' favor. We reverse.

On April 21, 1979, White and three other persons were passengers in a car owned and being driven by Sheila Morgan. They were traveling north on a straight and level four-lane segment of Interstate Highway 5 at approximately 55 miles per hour. White was seated on the right side of the back seat. Shortly after Morgan switched to the left northbound lane to pass another vehicle, White reached between the driver and a passenger in the front seat, "grabbed and yanked" the steering wheel and said "Let's get crazy." Morgan lost control of the car, and it struck the median barrier and overturned.

White contends that she is entitled to coverage under three policies: the automobile liability policy issued by plaintiff State Farm Mutual to White's parents, with whom she resides; the automobile liability policy issued by plaintiff State Farm Fire and Casualty to Morgan; and the homeowner's policy issued by State Farm Fire and Casualty to White's parents.

White's parents' automobile policy provides coverage for relatives of the insured living in the same household. The policy insures for negligence in the use of non-owned vehicles

"* * * [p]rovided such use, operation or occupancy is with the permission of the owner or person in lawful possession of such automobile and is *within the scope of such permission.*" (Emphasis added.)

---

[1] The other appealing defendants are White's parents, who are insureds under two of the three policies involved in the case, and Sheila Morgan, who was the driver of the car and is the insured under the third policy. A fifth defendant, Emma Yolanda Vera, was a passenger in the car. Vera does not appeal. Morgan and Vera have brought actions against White which are the subjects of plaintiffs' contention.

Morgan's automobile policy includes omnibus coverage for

> "* * * any other person while using the owned motor vehicle, provided the operation and the actual use of such vehicle are with the permission of the named insured or such spouse and are *within the scope of such permission.* * * *" (Emphasis added.)

The homeowner's policy provides personal liability coverage for White, but excludes coverage for

> "* * * bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of:
>
> "* * * * *
>
> "* * * a motor vehicle owned or *operated* by, or rented or loaned to any insured; * * *
>
> "* * * * *." (Emphasis added.)

The parties agree that Miss White had Miss Morgan's permission to occupy the vehicle as a passenger. Plaintiffs argue that the conduct of White which caused the accident constituted "operation" of the vehicle and exceeded the scope of the permission given White by Morgan. White argues:

> "* * * Obviously, the word 'operator' in an insurance policy involving automobiles refers to the driver. In the present case, Ms. White did not actually 'operate' the car — she merely *interfered with* Ms. Morgan's operation. Ms. Morgan was still the driver and nothing Ms. White did divested Ms. Morgan of that position.
>
> "* * * * *
>
> "At any rate, it is reasonable for a policy holder to assume that the 'operator' of the car is the driver. It is also reasonable to assume that there is a difference between a driver and a passenger, and that a person cannot be both at the same time. To contend that the word 'operate' means anything else is to render the term ambiguous. That being the case, the meaning of the word must be resolved in favor of the insured. * * *" (Emphasis White's.)

Although Miss White was admittedly occupying the vehicle as a passenger with Miss Morgan's permission, it goes without saying, however, that she did not have Miss Morgan's permission to seize the steering wheel suddenly and bring about the catastrophe that followed. This comes

squarely within the exclusionary provisions of the automobile liability policies quoted earlier. Therefore, while we agree with the trial court that Miss Morgan's personal injury action against Miss White is not covered under either the automobile liability policy issued by plaintiff State Farm Mutual to Miss White's parents, or the automobile liability policy issued by plaintiff State Farm Fire and Casualty Company to Miss Morgan, it is our conclusion that her personal injury action against Miss White is covered by the terms of the homeowner's policy carried by Miss White's family. As already noted, this policy provides personal liability coverage for Miss White's negligence except

" * * * bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of:

" * * * * *

" * * * a motor vehicle owned or operated by, or rented or loaned to any insured; * * *

" * * * * * ."

The homeowner's policy provides personal liability coverage for Miss White's actions except when she is using or operating a motor vehicle. As explained below, we conclude that she was not "using" or "operating" a motor vehicle within the meaning of that exception at the time of the accident involved here.

The trial court relied on *United States Fidelity & Guar. Co. v. Farm Bureau Mut. Ins. Co.*, 2 Kan App 2d 580, 584 P2d 1264 (1978). There, under facts very similar to those in the present case, the court concluded:

"We believe that when a person takes control of a moving vehicle, even though for only an instant, that person has gained control over it and is operating it within the normal definition and understanding which ordinary laymen would give to an insurance policy." 2 Kan App 2d at 583.

*See also State Farm Mutual Auto. Ins. Co. v. Larsen*, 62 Ill App 3d 1, 18 Ill Dec 582, 377 NE2d 1218 (1978), which reached the same conclusion under similar facts. As the accompanying analysis demonstrates, both of these cases were incorrectly decided and should not be followed. Stated in the simplest terms, Miss White's actions in grabbing the

steering wheel did not constitute "operating a motor vehicle." An automobile can have only one driver. The word "operator" in an insurance policy involving automobiles refers to the driver. *See Schaffer v. Mill Owners Ins. Co.,* 242 Or 150, 407 P2d 614 (1965), discussed below. It would be more accurate to say that she was *interfering* with the *operation* of a motor vehicle.

In *State Farm Mut. Automobile Ins. Co. v. Smith,* 48 F Supp 570 (DC Mo 1942), insured's granddaughter who was under the minimum driver's age was operating the automobile. As she approached a point at which it was necessary to turn left to enter a driveway, the insured took hold of the steering wheel and turned the automobile left across the street and into the driveway, where it struck pedestrians on the sidewalk. The insurer was held not to be liable under the policy, which did not apply while the automobile was being "operated" by any person under the minimum age.

*State Farm Ins. Co. v. Coughran,* 303 US 485, 58 S Ct 670, 82 L Ed 970 (1938), involved an automobile liability policy exempting the insurer unless the automobile was being operated by the assured, his paid driver, members of his immediate family or persons acting under his direction. The exemption also applied if the automobile was being operated by a person violating the law as to age or driver's license. The court held that the insurer was not liable when the collision occurred while an unlicensed, 13-year-old girl was driving, contrary to the assured's command and in violation of the California statutes, notwithstanding that she was acting under direction of assured's wife, whose act in seizing the wheel was the immediate cause of the collision.

In our motor vehicle code the term operator is defined as follows:

"(3) 'Operator' means any person who is in actual physical control of a vehicle." (ORS 481.040; *see also* ORS 482.020(3)).

In *Schaffer v. Mill Owners Ins. Co., supra,* the court said that the motor vehicle code definition of operator of a motor vehicle was not binding on the court in cases involving interpretation of the word "operator" as used in the

exclusion clause of an automobile liability policy. The court went on, however, to hold that the word "operator" when used in an automobile liability policy provision excluding from coverage claims arising from accidents occurring while the automobile was being operated by a male operator under 25 years of age, is synonymous with the word driver.

The point of the foregoing illustrations is to demonstrate that what Miss White was doing was interfering in the operation of a motor vehicle, not "operating" it. She was not sitting in the operator's seat; she did not have her foot on, or even have access to, either the brake or the accelerator. All the controls of the auto, other than the means of direction, were being physically controlled by Miss Morgan. By no stretch of the imagination was Miss White "operating" a motor vehicle in the usual and accepted sense of the word. The construction adopted by the dissenting and concurring opinion of Richardson, J., and by the *United States Fidelity & Guar. Co.* and *Larsen* courts does not stand up under close analysis. The sounder construction, we submit, is that followed in *Smith,* and *Coughran.*

Finally, the test to be applied in the interpretation of insurance policies is what a reasonably intelligent and careful person in the position of the insured would have understood the words of the policy to mean. *Borglund v. World Ins. Co.,* 211 Or 175, 181, 315 P2d 158 (1957). *See also Jarrard v. Continental Casualty,* 250 Or 119, 126, 440 P2d 858 (1968). If a policy is reasonably susceptible to two constructions, it is well settled that it should be construed most favorably to the insured. *Jarrard v. Continental Casualty, supra; Wallace Co. v. State F. M. Auto Ins. Co.,* 220 Or 520, 525, 349 P2d 789 (1960). Here, a reasonable interpretation of the term "operator" does not include White's activities in grabbing the wheel. Even assuming that there existed some ambiguity here, the homeowner's policy should be construed in favor of the insured, White, and against the insurer.

Affirmed in part; reversed in part and remanded.

## GILLETTE, J., concurring.

I join in the result reached by the majority on the basis of the following simple (but compelling) analysis: I

take it that we would all agree that, had White caused the car to go out of control by interfering with *Morgan* —by striking her, or pulling her hair or pouring hot coffee on her—the White homeowner's policy would provide coverage. If that is so, then it seems to me that it would be ludicrous in the extreme to say that, because White chose to interfere with the car's progress (the same result) by grabbing the wheel rather than Morgan, there is no coverage.

**RICHARDSON, J.,** concurring in part; dissenting in part.

The majority rejects the decisions of the Kansas court in *United States Fidelity & Guar. Co. v. Farm Bureau Mut. Ins. Co.,* 2 Kan App 2d 580, 584 P2d 1264 (1978), and the Illinois court in *State Farm Mutual Auto. Ins. Co. v. Larsen,* 62 Ill App 3d 1, 18 Ill Dec 582, 377 NE2d 1218 (1978). I would follow those decisions and would accordingly hold that, by grabbing the wheel and depriving the driver of control of the car, defendant Lorri Ann White became the "operator."

In each of the cases on which the majority does rely, the person actually driving the car was excluded from coverage. The issue was whether the presence or physical intervention of another person meant that the *driver* was *not* operating the vehicle. Those cases are 180 degrees apart from this one. The issue here is not whether Ms. Morgan, the driver, was operating the vehicle, but whether White's act was an assumption of physical control which also constituted operation. The answer, in my view, was ably stated by the Kansas court in *United States Fidelity & Guar. Co. v. Farm Bureau Mut. Ins. Co., supra:*

> "We believe that when a person takes control of a moving vehicle, even though for only an instant, that person has gained control over it and is operating it within the normal definition and understanding which ordinary laymen would give to an insurance policy." 2 Kan App 2d at 583.

The majority states:

> "* * * [W]hat Miss White was doing was interfering in the operation of a motor vehicle, not 'operating' it. She was not sitting in the operator's seat; she did not have her foot on, or even have access to, either the brake or the

accelerator. All the controls of the auto, other than the means of direction, were being physically controlled by Miss Morgan. By no stretch of the imagination was Miss White 'operating' a motor vehicle in the usual and accepted sense of the word. * * *" 60 Or App at 672.

I simply disagree with the majority's understanding of the "usual and accepted sense of the word." Having control of the "means of direction" of a car seems to me to be every bit as integral to its "operation" as the ability to stop it—especially when, as here, the act of taking control of the means of the car's direction made it impossible for the driver to stop the car before the collision occurred.

For the foregoing reasons, I would conclude that White is excluded from coverage under her parents' home-owners' policy, and I therefore respectfully dissent from the majority's contrary conclusion. Because White was operating the vehicle rather than acting within the scope of her permission as a passenger, I agree with the majority that she is not entitled to coverage under the two automobile liability policies.

**WARREN, J.,** dissenting in part, concurring in part.

I join in the opinion by Richardson, J. I write only to point out that *Schaffer v. Mill Owners Ins. Co.,* 242 Or 150, 407 P2d 614 (1965), was so factually dissimilar to the present case as to render the court's following statement of no precedential significance in the present context: "When used in this context we construe 'operator' to be synonymous with 'driver.' " In *Schaffer,* the person claimed to be the operator was sleeping in the back seat of the car and exercised no actual physical control over the movements of the vehicle immediately prior to the accident. The driver was his 17-year-old son, who was excluded from the policy as an underage driver. In the context of *Schaffer,* there can be no doubt that the driver was also the operator.

In *Schaffer,* however, the court referred repeatedly to the fact than an "operator" is one who exercises actual physical control over the vehicle. And that was in fact the basis of the decision in *Schaffer.* In the present case, the actions of Miss White altered the vehicle's course and her

exertion of that actual physical control over the vehicle's direction caused the accident. The view taken by Judge Richardson is consistent with the statutory definition of the term "operator" and is not at odds with *Schaffer,* when that case is considered in its factual context.