**WEST BEND MUTUAL INSURANCE COMPANY, petitioner, Appellant,**

v.

**MILWAUKEE MUTUAL INSURANCE COMPANY, Louis Hager, et al., Thomas Graham, et al., The City of Elysian, Mark Neste, d.b.a. Neste Ambulance Service, Immanuel-St. Joseph's Hospital of Mankato, Inc., Respondents.**

No. C0–85–177, C3–85–500.

Supreme Court of Minnesota.

April 11, 1986.

Dale M. Wagner, Minneapolis, for appellant.

Willard L. Converse, St. Paul, for Milwaukee Mut.

R. Michael Regan, Mankato, for Hager.

John A. Kottke, St. Paul, for Graham.

John H. McLoone, IV, Waseca, for Neste.

Raymond C. Krause, Mankato, for City of Elysian.

R.G. Johnson, Mankato, for Immanuel-St. Joseph's Hosp. of Mankato, Inc.

Marcus J. Christianson, Minneota, for Northstar Mut. Ins. Co.

Robert W. Murnane, St. Paul, for State Farm Fire and Cas.

SIMONETT, Justice.

The court of appeals held that a driver's personal injury claim against a passenger who grabbed the steering wheel of the moving automobile was covered by the passenger's homeowner's policy, the automobile exclusion in the homeowner's policy not being applicable. We affirm.

On December 11, 1981, Thomas Graham, age 19, was driving his Volkswagen Beetle on a township gravel road, with his girlfriend, Diane Hager, age 18, a front-seat passenger. As Thomas was shifting from third to fourth gear with one hand on the steering wheel and the other on the gearshift, Diane grabbed the steering wheel, apparently in an attempt to make Thomas stop so the two could talk and resolve a misunderstanding. The car went off the road and rolled over, and Thomas Graham was severely injured. Thereafter, Graham sued, among others, Diane Hager, alleging her negligence contributed to cause his injuries.

Diane resided with her parents, who had homeowner's insurance with West Bend Mutual Insurance Company and auto liability insurance with Milwaukee Mutual Insurance Company. After Graham commenced his personal injury action, plaintiff-appellant West Bend brought this declaratory judgment action, naming Milwaukee Mutual, Diane and her father, and others, as defendants, to determine which insurer, if either, had coverage for the claim against Diane Hager. The trial court ruled that the claim was covered by West Bend's homeowner's policy but not by Milwaukee Mutual's automobile policy. The court of appeals affirmed. *West Bend Mutual Insurance Co. v. Milwaukee Mutual Insurance Co.*, 372 N.W.2d 438 (Minn.Ct.App. 1985). We granted West Bend's petition for further review.

The trial court ruled that Diane Hager's use of the Graham automobile was without permission of the owner and, therefore, Milwaukee Mutual did not have coverage. That ruling has not been appealed to this court and is the law of the case. The only issue, therefore, is whether there is coverage for Diane Hager under the homeowner's policy. The parties agree there is homeowner's coverage unless West Bend's automobile exclusion applies. This exclusion reads:

> We do not cover bodily injury or property damage arising out of the ownership, maintenance, or use of
>
> \*      \*      \*      \*      \*      \*
>
> (b) any land motor vehicle designed for use on public roads, other than a recreational land motor vehicle, owned or operated by or rented or loaned to an insured person.

So the question becomes: When Diane Hager, West Bend's insured, grabbed the steering wheel, did the resulting injury to the driver Thomas Graham "aris[e] out of the * * * use of * * * [a] motor vehicle * * operated by * * * an insured person"?

The term "arising out of the use of" a vehicle has a rather broad sweep. It may

include use by a passenger. *See Haagenson v. National Farmers Union Property & Casualty Co.*, 277 N.W.2d 648 (Minn. 1979). The phrase has been interpreted to require "some causal connection between the injury and the use of the vehicle for transportation purposes," *Waseca Mutual Insurance Co. v. Noska*, 331 N.W.2d 917, 920 (Minn.1983); or that the vehicle be an "active accessory" to the injury, *Holm v. Mutual Service Casualty Insurance Co.*, 261 N.W.2d 598, 603 (Minn.1977). Here, when Diane Hager grabbed the steering wheel, she obviously was *using* the automobile. If West Bend's automobile exclusion were limited to the "arising out of the use of" language, there seems little doubt that Graham's injuries would "arise out of the use of" a vehicle by his passenger.[1] For West Bend's exclusion to apply, however, Diane Hager's use must also have occurred while the vehicle was "operated by" her. So, as the district court correctly observed, the question becomes whether the Volkswagen was being "operated by" Diane Hager when she grabbed the steering wheel.

West Bend's policy does not define "operated by." West Bend seems to argue that "operating" means essentially the same as "using." We disagree. Operation of a motor vehicle necessarily involves its use, but it does not follow that any use of an automobile is necessarily operation of that vehicle. *Cf. Waldbillig v. State Farm Mutual Automobile Insurance Co.*, 321 N.W.2d 49, 51 (Minn.1982) ("use" has a broader meaning than "operating"). Defendant-respondents Hager argue that common sense suggests the person driving a vehicle is the person operating it. But even if this is so, what does it mean to drive (or operate) a motor vehicle?

■ Driving and operating ordinarily refer, we think, to manipulation of the motor vehicle's mechanical features to control the vehicle's movement. Anyone applying a

car's accelerator and brakes controls speed, while whoever steers controls direction. Operating a manual transmission involves aspects of both speed and direction. A person sitting in the driver's seat, hands on the wheel and foot on the pedal, controlling both speed and direction, is undoubtedly "operating" the vehicle. Here, Thomas Graham was operating the motor vehicle. Was Diane Hager also operating it?

Courts have split on whether a passenger's grabbing of the steering wheel is operation of the vehicle. The Kansas appellate court has held that this kind of "use" is "operation": "We believe that when a person takes control of a moving vehicle, even though for only an instant, that person has gained control over it and is operating it within the normal definition and understanding which ordinary laymen would give to an insurance policy." *United States Fidelity & Guaranty Co. v. Hokanson*, 2 Kan.App.2d 580, 584 P.2d 1264 (1978). To the same effect is *State Farm Mutual Automobile Insurance Co. v. Larsen*, 62 Ill.App.3d 1, 18 Ill.Dec. 582, 377 N.E.2d 1218 (1978). On the other hand, the Oregon appellate court, with two dissenters, has held to the contrary. *State Farm Mutual Automobile Insurance Co. v. White*, 60 Or.App. 666, 655 P.2d 599 (1982). "By no stretch of the imagination," said the Oregon court, "was [the passenger] 'operating' a motor vehicle in the usual and accepted sense of the word." *Id.* at 672, 655 P.2d at 602. The Oregon court held that a back seat passenger who leaned over the front seat and grabbed the steering wheel, exclaiming, "Let's get crazy," was not operating the car but instead was interfering in its operation. In this case, both the trial judge and the court of appeals adopted the reasoning of the Oregon court.

■ Because there may be degrees of control over a vehicle's movement, ambiguity creeps into the term "operated by"

1. Milwaukee Mutual's auto liability policy provides coverage for damages "for which any insured person is legally liable because of bodily injury and property damage *arising out of the* ownership, maintenance, or *use* of a car or utility trailer." (Emphasis added.) Thus, Diane's "use" of the Graham Volkswagen would have been covered under Milwaukee Mutual's policy except it was without permission. If West Bend's exclusion clause read the same as Milwaukee Mutual's insuring clause, Diane Hager would not have coverage under either policy.

when it is claimed a vehicle has more than one operator. In resolving the ambiguity, while we must keep in mind the term is being used in a homeowner's policy where, generally speaking, vehicle-related risks are not contemplated, we must also remember that language ambiguities are usually to be resolved in favor of coverage. *Nordby v. Atlantic Mutual Insurance Co.* 329 N.W.2d 820, 822 (Minn.1983). We think, too, words should be given their ordinary and generally understood meaning.

We think it is generally understood and accepted that a motor vehicle is operated by one person, namely, the person in the driver's seat and at the controls. West Bend's exclusion clearly and quite properly excludes an insured in that position from homeowner's coverage. If the driver asks his passenger to assist or share in the operation of the vehicle, as, say, by steering the moving automobile while the driver uses both hands to remove a jacket, perhaps it might be said that the driver and the passenger are both "operating" the automobile, albeit imprudently; and, consequently, there would be no homeowner's coverage for either the driver or the passenger. Ordinarily, however, a vehicle has only one operator, and, unless a passenger is invited to share in that operation, or circumstances create a plausible justification for the passenger's assisting in the vehicle's operation, the vehicle is not considered to be operated by the passenger. Quite the contrary, as the Oregon court observed, the passenger is deemed to be interfering with the vehicle's operation. Here the car was being completely and in all respects operated by Thomas Graham. The passenger, without permission or plausible justification, leaned over and put her hand on the steering wheel so that the car almost immediately went out of control.[2] In these particular circumstances, while it

can be said that the resulting injury to the driver "arises out of the [passenger's] use of" the car, we do not think it can fairly be said that the vehicle was then being "operated by" the passenger. The passenger's actions are more realistically characterized as a disruption or interference with someone else's operation of the vehicle.

Affirmed.

---

2. Thomas says Diane grabbed the steering wheel and pulled it down before he could react, thereby causing the car to go off the right side of the road. On the other hand, Diane testified she wanted Thomas to stop so they could talk; she, therefore, took hold of the steering wheel with one hand but without any attempt to steer the car, and Tom almost immediately reacted by jerking the steering wheel, at which time her hand came off the wheel and the car left the road. Under either version, Diane's grabbing the wheel was without permission, express or implied, and the car almost immediately went out of control. The different versions of what happened are pertinent to a comparison of fault between the two actors, but under either version the vehicle was not operated by Diane.