**Paul D. HARRISON, Appellant,**

v.

**Michael A. TOMES, Defendant,**

and

**State Automoble Mutual Insurance Company, Respondent.**

No. 80042.

Supreme Court of Missouri, En Banc.

Nov. 25, 1997.

William R. Hirsch, Clayton, for Appellant.

Matthew R. Salamon, St. Louis, for Respondent.

HOLSTEIN, Judge.

Plaintiff, Harrison, appeals from the trial court's judgment granting State Automobile Mutual Insurance Company's motion to dismiss a garnishment action. The case was transferred to this Court by the Court of Appeals, Eastern District, after opinion for the purpose of reexamining existing law. Mo. Const. art. V, sec. 10. The central

issue in this case is whether a passenger who grabs the wheel of a motor vehicle is operating the vehicle within the meaning of a clause in a homeowners' insurance policy, which excludes from coverage accidents occurring while the insured is operating a motor vehicle. Following the rule that ambiguous exclusion clauses are to be construed narrowly in favor of providing coverage, we conclude that the passenger was not operating the vehicle. The judgment of the trial court is reversed.

## I.

The action was submitted to the trial court on a joint stipulation of facts. In November 1992, Paul Harrison, Michael Tomes and a third person were riding as front seat passengers in a truck driven by Jami Lauderdale. While Lauderdale was driving, Tomes reached over and jerked the steering wheel causing Lauderdale to lose control. The truck left the highway and turned over. Harrison was injured. Both Tomes and Harrison had been drinking alcohol prior to the accident.

A lawsuit by Harrison against Tomes resulted in an unsatisfied judgment. Harrison then brought this action for garnishment against State Automobile Mutual Insurance Company ("State Auto"). The parties agree that Tomes is an insured under a homeowners' policy issued to Tomes' aunt, with whom he is living.

The policy provides for two exclusions pertinent to this appeal:

**SECTION II–EXCLUSIONS**

1. **Coverage E—Personal Liability and coverage F—Medical Payments to Others** do not apply to **bodily injury** or **property damage:**

   a. which is expected or intended by the **insured;**

   . . .

   e. arising out of:

      (1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land convey-

ances, including trailers, owned or operated or rented or loaned to an **insured. . . .**

The parties agree that if neither of these exclusions apply, the policy affords coverage for Tomes and the garnishment properly lies.

## II.

■■■ The exclusion for bodily injury "expected or intended by the insured" does not apply. To invoke this exclusion the insurer must show "not only that the insured intended the acts causing the injury, but that injury was intended or expected from these acts." *American Family Mut. Ins. Co. v. Pacchetti,* 808 S.W.2d 369, 371 (Mo. banc 1991). Though the allegations may support a conclusion that Tomes' action in grabbing the steering wheel was intentional and reckless, it does not necessarily follow that he intended or expected that injury would result.

## III.

■■■ The second exclusion denies coverage when the personal liability arises out of the "use" of a motor vehicle "operated" by an insured. "Use" of a motor vehicle is a broad term that includes riding in the vehicle. *Francis–Newell v. Prudential Ins. Co.,* 841 S.W.2d 812, 814 (Mo.App.1992). It was Tomes' actions while "using" the vehicle as a passenger that caused the injuries to Harrison. The key issue is whether the vehicle was "operated" by Tomes.

The term "operated" as used in the policy is subject to two reasonable interpretations. In a narrow sense, the term may be limited to the primary driver and exclude a passenger who interferes with the driver's appropriate control and management of a vehicle by grabbing the steering wheel. But the term may also be interpreted more broadly to include any volitional act of control that effects the movement of a vehicle, such as when a passenger intentionally grabs the steering wheel without the driver's consent. In this context, the homeowners' policy is ambiguous because it is subject to more than one reasonable interpretation.[1]

---

1. Unable to find support in Missouri precedent or a standard dictionary for the contention that

the term "operated" is unambiguous, the concurring opinion looks to *West Bend Mutual Insur-*

When ambiguity exists in an insurance policy, it should be interpreted in favor of providing coverage. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993). Because the scope of the exclusion clause in the policy is ambiguous, it should be construed narrowly in favor of providing coverage. Accordingly, the exclusion in the homeowners' policy does not apply because the motor vehicle was not being "operated" by Tomes.

The holding in *Gibbs v. National General Insurance Co.*, 938 S.W.2d 600 (Mo.App. 1997), does not dictate a contrary result. Though the underlying facts of *Gibbs* are similar, the legal question was critically different. While riding as a passenger in the front seat, an unrestrained arrestee grabbed the wheel of a police car causing a collision, which resulted in injury to the officer driving the police car. After being denied coverage by the insurance company that insured the police car, the officer filed a claim under the uninsured motorist provision of the policy covering his personal vehicles. His insurer denied coverage asserting that the passenger was not an "operator" of the vehicle. The question before the court was whether the passenger was an "operator" within the meaning of a policy provision designed to provide coverage under sec. 379.203, RSMo, the uninsured motorist statute. A narrow reading of the term "operator" would deny coverage, whereas a broad reading of the term "operator" would provide coverage.

In construing the term "operator," the *Gibbs* court followed the Missouri rule "that an insurance policy is a contract to afford protection to an insured and will be interpreted, if reasonably possible, to provide coverage." *Id.* at 605 (citing *Brugioni v. Maryland Cas. Co.*, 382 S.W.2d 707, 710 (Mo. 1964)). The court noted that "coverage clauses are to be read broadly, while exclusions read narrowly, to afford the greatest possible coverage." *Id.* Hence the court construed "operator" for purposes of the uninsured motorist provisions broadly to include a passenger that intentionally grabs the wheel in order to afford coverage. *Id.*

Though the underlying facts of *Gibbs* are similar, the critical distinction is that in *Gibbs* the court was broadly construing a coverage clause, whereas in this case the Court is narrowly construing an exclusion clause. However, both interpretations result in insurance coverage. In view of the rule that ambiguities in an insurance policy are to be construed in favor of coverage, these interpretations are consistent.

We note that Kansas, Texas and Illinois courts have decided that a passenger who grabs the wheel is "operating" the vehicle, while Michigan, Minnesota and Oregon courts have come to the opposite conclusion. See *United States Fidelity & Guar. Co. v. Hokanson*, 2 Kan.App.2d 580, 584 P.2d 1264 (1978); *United States Fire Ins. Co. v. United Service Auto. Ass'n*, 772 S.W.2d 218 (Tex.Ct. App.1989); *State Farm Mut. Auto. Ins. Co. v. Larsen*, 62 Ill.App.3d 1, 18 Ill.Dec. 582, 377 N.E.2d 1218 (1978); *West Bend Mut. Ins. Co. v. Milwaukee Mut. Ins. Co.*, 384 N.W.2d 877 (Minn.1986); *Farm Bureau Gen. Ins. Co. v. Riddering*, 172 Mich.App. 696, 432 N.W.2d 404 (1988); *State Farm Mut. Auto. Ins. Co. v. White*, 60 Or.App. 666, 655 P.2d 599 (1982). The divergent conclusions reached by these jurisdictions is further evidence of the ambiguity inherent in the term "operate."

The Minnesota, Oregon, Michigan and Kansas courts, as well as our own court of appeals in *Gibbs*, are all consistent with one another. In each case, the rule that an ambiguous policy is to be interpreted in favor of the insured was applied. The holdings superficially appear inconsistent only because the Kansas and *Gibbs* courts were construing coverage clauses, whereas the Michigan, Minnesota and Oregon courts were constru-

---

*ance Co. v. Milwaukee Mutual Insurance Co.*, 384 N.W.2d 877 (Minn.1986). However, in that case the Minnesota Supreme Court clearly acknowledged the ambiguity and construed the term in favor of providing coverage:

> Because there may be degrees of control over a vehicle's movement, ambiguity creeps into the term "operated by" when it is claimed a vehi-

cle has more than one operator. In resolving the ambiguity, while we must keep in mind the term is being used in a homeowner's policy where, generally speaking, vehicle-related risks are not contemplated, we must also remember that language ambiguities are usually to be resolved in favor of coverage.

*Id.* at 879–80.

ing exclusion clauses. These holdings can be harmonized if it is recognized that application of the same rule of construction to different policy provisions may yield different results. The analysis of the Texas and Illinois courts is unpersuasive. These courts failed to recognize or consider any ambiguity in the term "operate" and blindly construed the term without consideration of the rule that ambiguities are to resolved in favor of the insured.

## IV.

The exclusions in the homeowners' policy do not bar coverage. The judgment of the circuit court dismissing the garnishment action is reversed, and the cause remanded.

BENTON, C.J., and PRICE, ROBERTSON and WHITE, JJ., concur.

LIMBAUGH, J., concurs in result in separate opinion filed.

COVINGTON, J., concurs in opinion of LIMBAUGH, J.

LIMBAUGH, Judge, concurring in result.

I concur in the outcome of this case, but write separately to argue that the term "operated" is not ambiguous. "Operated," as the majority defines it, encompasses both the narrow sense of the "primary driver" of the vehicle, as well as the broader sense of "any volitional act taken to affect the movement of the vehicle." The majority opinion turns on this finding alone as the only task remaining was the ministerial application of the rule of construction that ambiguities in exclusions are construed against the insurer.

In my view, the majority has created an ambiguity that simply does not exist. The term "operated" cannot be contorted to include the majority's broader sense of any volitional act to move the vehicle. When a passenger intentionally grabs the steering wheel without the driver's consent, the driver is still the operator of the vehicle, and conversely, the passenger is not operating the vehicle himself, but instead is trying to prevent the driver's operation of the vehicle. To operate, in other words, does not mean to interfere with the operation. To say that one operates a vehicle by interfering with the operation of the vehicle is unfathomable, if not absurd.

Further, the meaning of "operated" is plain. It incorporates the concept of control. The Minnesota Supreme Court, in *West Bend Mutual Ins. Co. v. Milwaukee Mutual Ins. Co.,* 384 N.W.2d 877 (Minn.1986), addressed the same issue with a lucid analysis. Referring to a similar case from Oregon, the court stated:

> We think it is generally understood and accepted that a motor vehicle is operated by one person, namely, the person in the driver's seat and at the controls.... If the driver asks his passenger to assist or share in the operation of the vehicle, as, say, by steering the moving automobile while the driver uses both hands to remove a jacket, perhaps it might be said that the driver and the passenger are both "operating" the automobile, albeit imprudently; and consequently, there would be no homeowner's coverage for either the driver or the passenger. *Ordinarily, however, a vehicle has only one operator, and, unless a passenger is invited to share in that operation, or circumstances create a plausible justification for the passenger's assisting in the vehicle's operation, the vehicle is not considered to be operated by the passenger. Quite the contrary, as the Oregon court observed, the passenger is deemed to be interfering with the vehicle's operation.*

*Id.* at 880 (emphasis added); [1] *see also Farm Bureau Gen. Ins. Co. v. Riddering,* 172 Mich.

1. The portion of *West Bend* quoted by the majority in its footnote 1 directly precedes the paragraph quoted in this concurring opinion, and is in fact limited by that paragraph. Contrary to the interpretation of the majority, the *West Bend* court did not "clearly acknowledge[ ] the ambiguity" of the term "operated." Instead, the *West Bend* court noted that the term "operated" could be ambiguous in those limited instances where a vehicle had more than one operator. The para-

graph quoted in this concurring opinion makes it clear that a vehicle is only viewed as having more than one operator in limited circumstances which are not applicable in this case. Thus, the broad interpretation suggested by the majority is limited not only by the words of that paragraph but also by the second paragraph as quoted here. In most circumstances, only one person is operating the vehicle and "unless a passenger is invited to share in that operation, or circum-

App. 696, 432 N.W.2d 404 (1988); *State Farm Mutual Auto. Ins. Co. v. White*, 60 Or.App. 666, 655 P.2d 599 (banc 1982).

In sum, I cannot adopt the majority's rationale that the term "operated" is ambiguous, at least in the context of this case. Nonetheless, I would hold that the exclusion does not apply because, as a matter of law, a vehicle is not "operated" by the act of grabbing the steering wheel of the vehicle without the driver's consent.

stances create a plausible justification for the passenger's assist[ance]," he is merely interfer-

