[No. 42307-0-I.   Division One.   April 26, 1999.]

NORTH PACIFIC INSURANCE COMPANY, *Appellant*, v. ROBERT E. CHRISTENSEN III, ET AL., *Respondents*.

*Robert N. Gellatly* and *Jennifer Suzanne Divine* of *Helsell, Fetterman, L.L.P.*, for appellant.

*Steven Turner Russell* of *Keolker & Swerk*, for respondents.

AGID, A.C.J. — North Pacific Insurance Company (NPI) brought a declaratory judgment action requesting a determination that a passenger who grabs the steering wheel of a moving car and causes an accident in which the driver is injured is not an "operator" covered by the Underinsured Motorist (UIM) provisions of the driver's automobile policy. Robert Christensen, the driver, prevailed after both parties moved for summary judgment. NPI appeals, arguing that the plain and unambiguous meaning of "operator" within the terms of an insurance policy is the driver, and a person

who grabs the steering wheel is interfering with the driver's operation of the car. We agree, reverse the trial court, and remand to that court to grant summary judgment for North Pacific Insurance.

## FACTS

James and Pamela Farmer purchased automobile insurance from NPI. Pamela's 16-year-old son, Robert Christensen, was driving their Datsun on his way to lunch with his high school friends. Christensen was driving when Chase, the front seat passenger, reached over and grabbed the steering wheel. The Datsun swerved into oncoming traffic, and Christensen was injured in the resulting accident.[1]

Christensen sought UIM benefits under the Farmers' NPI policy on the theory that Chase was an underinsured motorist. The policy provides, in pertinent part:

> We will pay damages which an **insured** is legally entitled to recover from the *owner or operator* of an **underinsured motor vehicle** because of:
>
> . . . **Bodily injury** sustained by an **insured** and caused by an accident . . . .

(Emphasis added.) NPI denied coverage and filed this declaratory judgment action.

In granting summary judgment for Christensen, the trial court reasoned:

> [T]he word "operator" must be read in context. Both sides agree that the phrase "underinsured motor vehicle" here is the Datsun. The provision at issue addresses the question of what happens with regard to "damages which an insured is legally entitled to recover from the owner or operator of [the Datsun]." There is no dispute that the insured, Christensen, can recover from Chase based on Chase's actions operating the

---

[1] Chase was charged with and found guilty of vehicular assault in juvenile court.

Datsun, even though Chase was not operating the vehicle with permission or with full control, or apparently with any common sense. Chase is subject to criminal liability as well for such actions operating the vehicle. Because the insured Christensen can recover from Chase for what Chase did in imperfectly and negligently operating the vehicle, North Pacific is under that provision required to pay the insured Christensen and then in turn be subrogated to Christensen's rights to recover from Chase what it paid, whether or not any such recovery will ultimately be possible from Chase.

In so reasoning, the trial court erred. Simply because Christensen could recover from Chase in a civil action does not mean he also has coverage under an insurance policy. That subrogation rights are available has nothing to do with insurance coverage and cannot be a basis for interpreting the meaning of a contract.

▮▮ We review summary judgment motions de novo.[2] Interpretation of an insurance policy is a question of law.[3] Undefined terms in an insurance policy "must be given a fair, reasonable, and sensible construction as would be given by an average insurance purchaser."[4] Courts give such terms their " ' "plain, ordinary, and popular" ' " meaning."[5]

▮▮ When examining a policy,

the entire contract must be construed together so as to give force and effect to each clause. If the language in an insurance contract is clear and unambiguous, the court must enforce it as written and may not modify the contract or create ambiguity where none exists.[6]

---

[2]*Tran v. State Farm Fire & Cas. Co.*, 136 Wn.2d 214, 961 P.2d 358 (1998).

[3]*Ross v. State Farm Mut. Auto. Ins. Co.*, 132 Wn.2d 507, 515, 940 P.2d 252 (1997).

[4]*Mid-Century Ins. Co. v. Henault*, 128 Wn.2d 207, 213, 905 P.2d 379, 59 A.L.R. 5TH 789 (1995).

[5]*Daley v. Allstate Ins. Co.*, 135 Wn.2d 777, 784, 958 P.2d 990 (1998) (quoting *Kish v. Insurance Co. of N. Am.*, 125 Wn.2d 164, 170, 883 P.2d 308 (1994)).

[6]*Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 456, 760 P.2d 337 (1988) (citation omitted).

Insurance regulatory statutes become part of insurance policies.[7] Washington's underinsured motorist statute provides:

> No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from *owners or operators* of underinsured motor vehicles . . . because of bodily injury, death, or property damage, resulting therefrom . . . .[8]

(Emphasis added.) NPI's policy language tracks the statute, but neither the statute nor the clause at issue here defines "operator." No Washington case addresses the issue of whether a passenger who grabs the steering wheel is an "operator" within the meaning of the UIM statute.[9]

■ We give an undefined statutory term its plain and ordinary meaning, as found in a dictionary.[10] "Operator" is defined as "one that produces a physical effect or engages himself in the mechanical aspect of any process or activity as . . . [a] driver."[11] A driver is "a person in actual physical

---

[7]*Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 251, 850 P.2d 1298 (1993).

[8]RCW 48.22.030(2). The UIM policy here tracks the statute.

[9]Christensen argues that two cases, *Viking Ins. Co. v. Zinkgraf*, 47 Wn. App. 645, 737 P.2d 268 (1987), and *Oregon Mut. Ins. Co. v. Fonzo*, 2 Wn. App. 304, 469 P.2d 989, *review denied*, 78 Wn.2d 993 (1970), address this issue. However, neither case controls here. The issue in *Zinkgraf* was whether one who grabbed a steering wheel was "using" a car with "permission," as required by an inclusionary insurance policy clause. 47 Wn. App. at 646-47. *Fonzo* addressed whether a car was "being operated by" a driver who left the car running and went into an adjacent store at the time of an accident. 2 Wn. App. at 307.

[10]*American Legion Post No. 32 v. City of Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991).

[11]Webster's Third New International Dictionary 1581 (1969).

control of a vehicle,"[12] and control means the "power or authority to guide or manage."[13]

Here, the term "operator" in the Farmer's UIM clause is not subject to two reasonable yet different interpretations and therefore is not ambiguous. The clear, unambiguous meaning of "operator," as understood by the average insurance consumer, is the person who controls all the critical functions of operating a car—the ignition, accelerator, brake, and steering. While we agree that one who grabs the steering wheel usurps for an instant one part of operating a car, he is at most interfering with the driver's ability to completely control the car and is not in actual physical control of it.[14] He cannot turn it off or on, slow down, speed up, stop or otherwise control the operation of the vehicle. At most he can force it off its proper course for a moment. This is not operating a car in the way a person purchasing insurance would expect.[15]

Christensen argues that *In re Arambul* requires us to hold that someone who grabs a steering wheel is an "operator."[16] Our decision here does not conflict with the decision in *Arambul* because that court was determining whether a criminal defendant's act of grabbing the wheel subjected her to criminal liability for causing the death of another person. The *Arambul* court reviewed a vehicular homicide case and held that one who momentarily grabs a steering wheel is an "operator" of an automobile as defined in the motor vehicle code.[17] But the focus of the *Arambul* decision

[12]*Id.* at 692.

[13]*Id.* at 496.

[14]Our decision is consistent with authority from other states. *See, e.g., State Farm Mut. Auto. Ins. Co. v. White*, 60 Or. App. 666, 655 P.2d 599 (1982), *review denied*, 660 P.2d 683 (1983); *Farm Bureau Gen. Ins. Co. v. Riddering*, 172 Mich. App. 696, 432 N.W.2d 404 (1988); *West Bend Mut. Ins. Co. v. Milwaukee Mut. Ins. Co.*, 384 N.W.2d 877 (Minn. 1986); *Harrison v. Tomes*, 956 S.W.2d 268 (Mo. 1997).

[15]*See Henault*, 128 Wn.2d at 213.

[16]*In re Arambul*, 37 Wn. App. 805, 808, 683 P.2d 1123, *review denied*, 102 Wn.2d 1022 (1984) (negligent homicide case).

[17]*Id.* "Operator or driver" means every person who drives or is in actual physical control of a vehicle. RCW 46.04.370.

was on whether Ms. Arambul's actions were a proximate cause of the fatal accident for purposes of a criminal prosecution, not how a UIM clause in an insurance contract should be interpreted. *Arambul* does not control our analysis because it was limited to examining the effects of the defendant's actions in harming another, not what an insurance policy means or a consumer expects when he pays his premiums for coverage.

Christensen also relies on cases from other jurisdictions as supporting his argument that one grabbing the steering wheel is operating a car.[18] But these decisions do not persuade us that the plain meaning of "operator" in the context of an UIM clause includes one who momentarily interferes with the driver. We also recognize the public policy embodied in RCW 48.22.030(2) favors finding coverage where possible. We are unwilling, however, to strain the ordinary meaning of the term "operator" in an insurance policy to include one who momentarily controls one of the several parts of the process of operating a car. The interpretation Christensen proposes simply does not reflect the "sensible construction . . . an average insurance purchaser" would give it.[19]

Chase interfered with Christensen's operation of the Datsun. Because Chase is not an operator within the UIM clause, Christensen is not entitled to recover from NPI. We reverse and remand to the trial court to grant summary judgment for NPI. We also reverse the trial court's decision awarding attorney's fees to Christensen because he is not the prevailing party.[20]

---

[18]*See, e.g., State Farm Mut. Auto. Ins. Co. v. Larsen*, 62 Ill. App. 3d 1, 377 N.E.2d 1218, 18 Ill. Dec. 582 (1978); *U.S. Fidelity & Guar. Co. v. Hokanson*, 2 Kan. App. 2d 580, 584 P.2d 1264 (1978); *U.S. Fire Ins. Co. v. United Serv. Auto. Ass'n*, 772 S.W.2d 218 (Tex. Ct. App. 1989); *Gibbs v. National Gen. Ins. Co.*, 938 S.W.2d 600 (Mo. Ct. App. 1997).

[19]*Henault*, 128 Wn.2d at 213.

[20]*See Olympia S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 52, 811 P.2d 673 (1991).

454

Reversed and remanded.

GROSSE and COX, JJ., concur.

Review granted at 139 Wn.2d 1001 (1999).