[No. 68155-4. En Banc.]
Argued June 20, 2000.    Decided February 8, 2001.

NORTH PACIFIC INSURANCE COMPANY, *Respondent*, v. ROBERT E. CHRISTENSEN III, ET AL., *Petitioners*.

44

*Steven T. Russell* (of *Koelker & Swerk*), for petitioners.

*Robert N. Gellatly, Jr.*, and *Jennifer S. Divine* (of *Helsell Fetterman, L.L.P.*), for respondent.

IRELAND, J. — In this case, we must determine whether a passenger who causes an accident by unexpectedly grabbing the steering wheel of a motor vehicle is the operator of that vehicle for purposes of underinsured motorist (UIM) coverage. We hold that, under the facts of this case, the passenger assumed physical control of the vehicle. Therefore, the passenger was the operator of the vehicle for purposes of the UIM provisions of this particular policy.

## FACTS

Robert Christensen, a 16-year-old student, was driving his family's car in traffic when Christensen's high school friend, Christopher Chase, reached over from the front passenger seat and grabbed the steering wheel. Chase caused the car to swerve across the center line and to collide with an oncoming vehicle.[1] Christensen and others were injured in the collision. Chase was found guilty in juvenile court of vehicular assault.

At the time of the collision, Christensen was insured under a North Pacific Insurance Company (North Pacific) automobile policy issued to his parents, James and Pamela Farmer. The policy provided liability and underinsured motorist coverage. The limits of the liability coverage were exhausted to satisfy the claims of others injured in the accident.

---

[1] According to the backseat passenger, Waldemar Tarasewicz, before Chase grabbed the steering wheel, Christensen had been swerving the car back and forth "trying to scare us." Clerk's Papers (CP) at 93. Christensen admitted swerving, but said that he stayed in the lane and "had total control." CP at 118. Tarasewicz said the car was going straight when Chase grabbed the wheel.

Christensen submitted a UIM claim under this policy seeking to recover damages for his injuries on the grounds that Chase was the "operator" of the vehicle at the time of the collision, and therefore was an underinsured motorist.

## PROCEDURAL HISTORY

Christensen requested arbitration of his UIM claim as an insured under the UIM coverage of the Farmers' North Pacific policy. North Pacific stated that Christensen "was insured under the policy by virtue of being a family member of the named insured." Clerk's Papers (CP) at 161. However, North Pacific denied coverage on the basis that Chase was neither the owner nor operator of the car in which he was traveling at the time of the accident. North Pacific asserts that Chase's action of grabbing the steering wheel did not make him an "operator" of the vehicle under the insuring clause of the North Pacific policy.

Christensen continued to assert a right to coverage. North Pacific then filed a declaratory judgment action in King County Superior Court, seeking a declaration that there was no coverage of Christensen's UIM claim under North Pacific's policy and that North Pacific, therefore, had no duty to pay benefits with respect to the claim.

Both parties moved for summary judgment. The trial court granted Christensen's motion, holding that Christensen's UIM claim was covered under North Pacific's policy. The trial court held that Chase was the operator of the vehicle, "even though Chase was not operating the vehicle with permission or with full control, or apparently with any common sense." CP at 215. The trial court entered judgment granting attorney fees and costs to Christensen pursuant to *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).[2]

North Pacific appealed, arguing that the plain and unambiguous meaning of "operator" within the terms of its

---

[2] The parties agree that Christensen's award of fees and costs is dependent upon how the insurance coverage issue is resolved on appeal.

policy provision is the driver, and a passenger who grabs the steering wheel is merely interfering with the driver's operation of the car. The Court of Appeals agreed, reversed the trial court, and remanded to that court to grant summary judgment for North Pacific. *N. Pac. Ins. Co. v. Christensen*, 95 Wn. App. 447, 453-54, 975 P.2d 552 (1999).

This Court granted Christensen's petition for review of the Court of Appeals' decision.

## ANALYSIS

### Standard of Review

When reviewing an order for summary judgment, an appellate court engages in the same inquiry as the trial court. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). Summary judgment is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993). All facts and reasonable inferences are considered in the light most favorable to the nonmoving party. *Taggart v. State*, 118 Wn.2d 195, 199, 822 P.2d 243 (1992). Questions of law are reviewed de novo. *Mountain Park Homeowners Ass'n*, 125 Wn.2d at 341.

In the instant case, no material facts are in dispute. Thus, this Court decides whether a passenger who grabs the steering wheel is the "operator" of the vehicle for purposes of North Pacific's UIM policy language purely as a matter of law.

### Statutory and Insurance Policy Language

Washington's UIM statute requires automobile insurance policies to insure "against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle . . . ." RCW 48.22.030(2). Such policies must provide coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or *operators* of

underinsured motor vehicles, hit-and-run motor vehicles, and phantom vehicles because of bodily injury, death, or property damage . . . ." *Id.* (emphasis added).

The UIM provision of the North Pacific policy reads as follows:

> We will pay damages which an **insured** is legally entitled to recover from the owner or *operator* of an **underinsured motor vehicle** because of:
>
> 1. **Bodily injury** sustained by an **insured** and caused by an accident.

CP at 129 (emphasis added).[3]

As is shown above, North Pacific's policy language tracks the UIM statute. However, neither the statute nor the provision at issue defines the term "operator." Consequently, the case turns on the definition of this term.

The Meaning of "Operator"

■■ The interpretation of insurance policy language is a question of law. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 480, 687 P.2d 1139 (1984). Undefined terms in an insurance policy "must be given a fair, reasonable, and sensible construction as would be given by an average insurance purchaser." *Mid-Century Ins. Co. v. Henault*, 128 Wn.2d 207, 213, 905 P.2d 379 (1995).

■ "The terms of the policy must be understood in their plain, ordinary, and popular sense." *Farmers Ins. Co. v. Miller*, 87 Wn.2d 70, 73, 549 P.2d 9 (1976). "To determine the ordinary meaning of an undefined term, our courts look to standard English language dictionaries." *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990).

The Court of Appeals, applying the rule that courts may rely on the dictionary to determine the ordinary meaning of an undefined term, looked to *Webster's Third New International Dictionary* 1581 (1969):

---

[3] The boldfaced terms are defined in the definitions section of the policy.

"Operator" is defined as "one that produces a physical effect or engages himself in the mechanical aspect of any process or activity as . . . [a] driver." A driver is "a person in actual physical control of a vehicle," and control means the "power or authority to guide or manage."

*Christensen*, 95 Wn. App. at 451-52 (footnotes omitted) (alteration in original).

The Court of Appeals then followed by stating that an operator is "the person who controls all the critical functions of operating a car—the ignition, accelerator, brake, and steering." *Id.* at 452. However, an "operator" is not solely the person occupying the driver's seat, but rather is anyone who is "in actual physical control of a vehicle," having the "power to guide" it. The appellate court inserted unwarranted restrictions based on its own perception of what the "average insurance consumer" would understand. *Id.* While the appellate court correctly relies on the dictionary definitions, those definitions contain no suggestion that an "operator" must be a single person who is in command of all the controls of a car.

The flaw in the appellate court's analysis is also apparent in its subsequent observation:

While we agree that one who grabs the steering wheel usurps for an instant one part of operating a car, he is at most interfering with the driver's ability to completely control the car and is not in actual physical control of it.

*Id.* at 452.

The dictionary definitions do not impose limits on the "purpose, extent, or duration" of an operator's control over a vehicle. The appellate court erroneously includes restrictions as to purpose (one who "usurps" the wheel is "interfering with the driver's ability to completely control the car"), extent ("all the critical functions of operating a car"), and duration ("for an instant"). The ordinary meanings do not support such restrictions.

North Pacific argues that the customary meaning of a car's operator is the driver. While this meaning may be appropriate in common situations, Christensen responds

that automobile insurance should also "afford protection for the broad range of unusual events that can occur to injure people during the operation of motor vehicles." Br. of Resp't at 6.

From a practical standpoint, narrowing the scope of "operator" to a single person who is in sole command of all the controls of a vehicle does not sufficiently address the real-life situations that arise while driving. Auto mishaps rarely result when drivers are in total control of all of the functions of their cars. Instead, accidents occur when there are failures to maintain complete control, including when a passenger unexpectedly grabs the steering wheel. Accidents can happen almost instantaneously—when only one of the car's critical controls is compromised.

Here, Chase did not merely interfere with Christensen's driving—he took actual physical control of the car himself. When Chase suddenly grabbed the steering wheel, he became the operator of the vehicle in which he had been a passenger. Although Christensen was sitting in the driver's seat, he became powerless to control the car.[4] Chase assumed control of the steering mechanism long enough to cause the collision and resulting injuries.

██ For purposes of North Pacific's UIM policy provision, the term "operator" should be defined as "a person who is in actual physical control of a vehicle."[5] "Operator" reasonably includes a passenger who grabs the steering wheel of a moving car.

---

[4] As North Pacific states in its complaint: "The accident occurred when Christopher Chase, a passenger sitting in the right front seat of the vehicle, momentarily grabbed and/or interfered with the steering wheel, causing defendant Christensen to *lose control*, cross the center line, and collide with another vehicle." CP at 8 (emphasis added).

[5] This construction of the term "operator" corresponds with the definition found in the Motor Vehicle Code, Title 46 RCW: " 'Operator or driver' means every person who drives or is *in actual physical control of a vehicle*." RCW 46.04.370 (emphasis added). This meaning is also consistent with public policy: "RCW 48.22.030 [the UIM statute] is to be liberally construed in order to provide broad protection against financially irresponsible motorists." *Finney v. Farmers Ins. Co.*, 92 Wn.2d 748, 751, 600 P.2d 1272 (1979).

This interpretation is consistent with two Washington cases that have dealt with "wheel grabbing."[6]

In the first case, *Viking Insurance Co. v. Zinkgraf*, 47 Wn. App. 645, 737 P.2d 268 (1987), Mr. Zinkgraf was a front seat passenger who "unexpectedly grabbed the steering wheel causing the car to leave the road and strike a tree." *Id.* at 645-46. The driver sued Zinkgraf for personal injuries and property damage. In order for the driver to recover under Zinkgraf's automobile insurance policy, Zinkgraf had to be found to have used or driven the car with the owner's permission. Although coverage was denied due to lack of permission, the court's analysis of "using" the car is consistent with our definition of "operating": "The term 'use' in an automobile insurance policy has been defined as '[a]ny exercise of control over the vehicle . . . regardless of its purpose, extent, or duration.' " *Id.* at 647 (quoting 12 GEORGE J. COUCH, COUCH CYCLOPEDIA OF INSURANCE LAW § 45:64 (Ronald A. Anderson & Mark S. Rhodes, 2d rev. ed. 1981)).

The facts of the second case, *In re Arambul*, 37 Wn. App. 805, 683 P.2d 1123 (1984), are remarkably similar to the case at issue. In this second case, the teenage passenger, Rose Arambul, caused a fatal accident when she grabbed the steering wheel and caused the car she was riding in to cross the center line and collide with an oncoming car. *Id.* at 806. Miss Arambul was charged with negligent homicide by means of a motor vehicle under former RCW 46.61.520 (1975); the statute applied to persons who caused death

---

[6] Courts in other states have split as to whether a passenger who grabs the steering wheel is an "operator." Some jurisdictions hold that a passenger who grabs the steering wheel is an operator. *See Gibbs v. Nat'l Gen. Ins. Co.*, 938 S.W.2d 600 (Mo. Ct. App. 1997); *United States Fire Ins. Co. v. United Serv. Auto. Ass'n*, 772 S.W.2d 218 (Tex. Civ. App. 1989); *United States Fid. & Guar. Co. v. Hokanson*, 2 Kan. App. 2d 580, 584 P.2d 1264, 1267 (1978) ("[W]hen a person takes control of a moving vehicle, even though for only an instant, that person has gained control over it and is operating it within the normal definition and understanding which ordinary laymen would give to an insurance policy."); *State Farm Mut. Auto. Ins. Co. v. Larsen*, 62 Ill. App. 3d 1, 377 N.E.2d 1218, 18 Ill. Dec. 582 (1978). Others hold that the passenger is interfering with the vehicle's operation. *See Harrison v. Tomes*, 956 S.W.2d 268 (Mo. 1997); *Farm Bureau Gen. Ins. Co. v. Riddering*, 172 Mich. App. 696, 432 N.W.2d 404 (1988); *West Bend Mut. Ins. Co. v. Milwaukee Mut. Ins. Co.*, 384 N.W.2d 877 (Minn. 1986); *State Farm Mut. Auto. Ins. Co. v. White*, 60 Or. App. 666, 655 P.2d 599 (1982).

" 'by the operation of any vehicle in a reckless manner or with disregard for the safety of others.' " *Id.* at 807 (quoting former RCW 46.61.520). The statutory definition of "operator," for purposes of the crime, is " 'every person who drives or is in actual physical control of a vehicle.' " *Id.* (quoting RCW 46.04.370).

Miss Arambul argued that she was not the operator of the vehicle "because she had no control of the gas, brake, or gearshift, and only split-second contact with the steering wheel." *Id.* at 807.

After noting that the use of the disjunctive "or" in the statutory language indicates that "operator" is intended to include persons who are not necessarily drivers, the *Arambul* court reasoned as follows:

> The ordinary meaning of the term "actual physical control" is "existing" or "present bodily restraint, directing influence, domination or regulation." Miss Arambul's acts fall within this definition . . . . The fact Miss Arambul did not have access to the accelerator or brakes did not affect her "influence, dominion, or regulation" of the vehicle. The momentary duration of this dominion is insignificant; for that instant in time she directed the path of the automobile and caused the death of another.

*Id.* at 808 (citations omitted).

The court held "that Miss Arambul's momentary grabbing of the steering wheel of the vehicle in which she was riding comes within the ordinary meaning of the term 'actual physical control.' " *Id.* at 808.

In the instant case, Chase's momentary control of the steering wheel was likewise sufficient to cause Christensen's car to cross the center line, to collide with an oncoming car, and to result in injuries.

It is argued that the statutory definition of "operator" should be disregarded because it was enacted for purposes of determining criminal conduct, not insurance coverage. Rather, the insurer would have us resort to guessing what the "average insurance consumer" would understand "operator" to mean. This argument is weak. A written defini-

tion by statute is clearly superior to supposition concerning the "average insurance consumer's" understanding. The fact that the definition is for purposes of a criminal statute actually enhances its value, for a person's liberty may depend upon it.

## CONCLUSION

In the context of this case, the term "operator" is not ambiguous; it is merely undefined by North Pacific in its policy. When the term is given its usual and ordinary meaning according to dictionary definitions, an "operator" is a person who is in "actual physical control" of a vehicle. This meaning is also consistent with other Washington cases, the Motor Vehicle Code, and public policy.

While the passenger, Chase, did not have sole and continuous control of all the car's functions, he was in "actual physical control" of the steering mechanism long enough to cause a collision and resulting injuries. Therefore, Chase is an "operator" of Christensen's vehicle for purposes of North Pacific's UIM policy provisions.

We reverse the Court of Appeals' ruling and reinstate the trial court's order granting Christensen's summary judgment motion and its judgment granting fees and costs to Christensen. We award attorney fees on appeal to Christensen pursuant to RAP 18.1.

SMITH, SANDERS, and BRIDGE, JJ., and GUY, J. Pro Tem., concur.

MADSEN, J. (concurring) — Although I agree with the majority's result, I disagree with its analysis. First, the majority concludes that the term "operator" in the North Pacific Insurance Company policy is not ambiguous. I disagree. Second, the majority states that using a criminal statutory definition of the term "operator" is superior to determining the meaning according to the average consumer of insurance. However, the principle is well settled

that insurance terms should be construed in accord with the average insurance purchaser's understanding of the term. For these reasons, I concur only in result.

As noted, the majority concludes the term "operator" is unambiguous and means "a person who is in actual physical control of a vehicle." Majority at 50. This is a dictionary definition of "driver," *see Webster's Third New International Dictionary* 692 (1993), and is also the definition of "operator" found in the Motor Vehicle Code, specifically in RCW 46.04.370. *See* majority at 50 n.5.

Turning first to the majority's reliance on the Motor Vehicle Code, there is no indication that the Legislature intended that the definition in the Motor Vehicle Code is to be applied to insurance policy provisions respecting underinsured motorist coverage. Because that definition accords with the dictionary definition of driver, however, the more important point to be made is that in discussing the statutory definition the majority completely departs from the essential rule for construing insurance policy language. The majority first pays lip service to this rule, i.e., that policy language is to be construed as " 'an average insurance purchaser' " would construe it. Majority at 48 (quoting *Mid-Century Ins. Co. v. Henault*, 128 Wn.2d 207, 213, 905 P.2d 379 (1995)). Then, disregarding this well-settled principle of insurance contract construction, the majority calls the insurer's argument based upon this principle "weak" and says that "[a] written definition by statute is clearly superior to supposition concerning the 'average insurance consumer's' understanding." Majority at 52-53. The majority is internally inconsistent and inappropriately dismisses the established rule of law. Its analysis injects needless uncertainty into other insurance policies having terms that must be construed because, while the statutory definition here may reflect the common understanding, that may not be true in other cases.

As to the majority's conclusion that "operator" is unambiguous, I would instead apply the following reasoning. An insurance policy should be given a "fair, reasonable, and

sensible construction as would be given to the contract by the average person purchasing insurance." *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 575, 964 P.2d 1173 (1998) (quotation marks and citations omitted). Undefined terms in a policy are to be given their " 'plain, ordinary, and popular' " meaning. *Id.* at 576 (quoting *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990)).

The term "operator" is undefined. As the Court of Appeals observed, the ordinary definition of " '[o]perator' " is " 'one that produces a physical effect or engages himself in the mechanical aspect of any process or activity as . . . [a] driver.' " *N. Pac. Ins. Co. v. Christensen*, 95 Wn. App. 447, 451-52, 975 P.2d 552 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1581 (1969)), *review granted*, 139 Wn.2d 1001, 989 P.2d 1141 (1999). In relevant part, driver means, as noted, one in actual physical control of a vehicle. These definitions do not, in and of themselves, resolve the meaning of the term "operator," because even under these definitions the term is subject to two reasonable interpretations in the context here:

> In a narrow sense, the term may be limited to the primary driver and exclude a passenger who interferes with the driver's appropriate control and management of a vehicle by grabbing the steering wheel. But the term may also be interpreted more broadly to include any volitional act of control that [a]ffects the movement of a vehicle, such as when a passenger intentionally grabs the steering wheel without the driver's consent.

*Harrison v. Tomes*, 956 S.W.2d 268, 269 (Mo. 1997). Both the narrow and broad interpretations fall within the standard dictionary definition. "Because there may be degrees of control over a vehicle's movement, ambiguity creeps into the term 'operated by' . . . ." *W. Bend Mut. Ins. Co. v. Milwaukee Mut. Ins. Co.*, 384 N.W.2d 877, 879 (Minn. 1986). As the majority notes, courts have in fact split on the meaning of the term "operator." Majority at 51 n.6.

Where ambiguity exists in an insurance policy, the court's goal is to interpret and enforce the contract as the parties

intended. *PUD No. 1 v. Int'l Ins. Co.*, 124 Wn.2d 789, 799, 881 P.2d 1020 (1994). The contract is viewed as a whole, and its subject matter and objective are considered, as well as the circumstances surrounding the making of the contract, subsequent conduct of the parties, and the reasonableness of their respective interpretations. *Id.* If ambiguity remains, then the ambiguity is resolved most favorably to the insured. *Id.*

Here, the ambiguity remains unresolved. Where ambiguity remains in an inclusionary clause, liberal construction in favor of coverage is given where possible. *Ross v. State Farm Mut. Auto. Ins. Co.*, 132 Wn.2d 507, 515-17, 940 P.2d 252 (1997). Under this rule, "operator" includes the wheel-grabbing passenger. The circumstances involve a volitional act of control that affects the movement of the vehicle.

This conclusion is in harmony with the underinsured motorist statute. The underinsured motorist provisions do not provide any specific indication of the scope of coverage where underinsured operators are involved, and do not define "operator." However, RCW 48.22.030 is to be liberally construed to provide broad protection from motorists who do not carry sufficient liability insurance. *Touchette v. N.W. Mut. Ins. Co.*, 80 Wn.2d 327, 332, 494 P.2d 479 (1972).

I would hold that the term "operator" as used in the policy language is ambiguous and should be construed in favor of coverage.

The majority's attempt to bolster its approval of the statutory definition in the Motor Vehicle Code is unconvincing. The majority suggests that "[t]he fact that the definition is for purposes of a criminal statute actually enhances its value, for a person's liberty may depend upon it." Majority at 53. It is a little difficult to respond to this statement; however, I believe the court's goal in determining the meaning of an insurance term is not to engage in a metaphysical weighing of definitional values, but rather to ascertain what the term is intended to mean in the contract

in light of the understanding of the average purchaser of insurance.

I concur in the result.

ALEXANDER, C.J., JOHNSON, J., and TALMADGE, J. Pro Tem., concur with MADSEN, J.